PEAKER *v.* POWELL.

5-3712                                          398 S. W. 2d 58

Opinion delivered December 20, 1965.

[Rehearing denied February 7, 1966.]

*Keith, Clegg & Eckert,* for appellant.

*Joe D. Woodward* and *Lewis D. Smith,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Delbert Powell, instituted suit against appellants, Don H. Peaker and Augusta Peaker, his wife, to recover the sum of $9,313.13, representing an alleged overpayment in the purchase of a certain oil payment, payable from production of oil and gas, and frequently referred to in the pleadings as a "vendor's lien." After the filing of an answer, which in effect denied the pertinent allegations of the complaint, the court, sitting as a jury, held for appellee, and entered judgment against appellants in the amount sought, $9,313.13. From this judgment, appellants bring this appeal.

The background of the litigation is as follows:

Appellants, by letter, on September 12, 1957, and two telegrams bearing the same date, agreed to sell to appellee "all of our right, title and interest in, on and upon and to the real and personal property oil and gas leasehold interest, vendor's lien interest in Sections 27 and

28, Township 15 South, Range 15 West, Ouachita County, Arkansas, less and except the Southwest Quarter of the Southeast Quarter of Section 27, Township 15 South, Range 15 West, Ouachita County, Arkansas.'' The trial court rendered an opinion, setting out the pertinent facts, from which we quote:

''The consideration for said sale was the sum of $200,000.00 and this sum was paid by * * * $35,000.00 check, together with payments made for the defendants, and which payments are set out in a letter dated December 2, 1957, from N. P. Powell to Don H. Peaker, * * * together with a letter * * * from Don H. Peaker to Delbert Powell, explaining some of the bills that were paid by Powell for Peaker and credited by Peaker on the $200,000.00 owed by Powell to Peaker.

''This law suit arose as a result of a vendor's lien, which the defendant Peaker had retained in some of the properties here involved to secure $38,909.65, together with 6% interest, and which vendor's lien was also assigned to the plaintiff by the defendant as a part of the deal for which the plaintiff would pay the defendant the sum of $200,000.00.

''The vendor's lien was assigned to the plaintiff by the defendants in an instrument dated October 12, 1957, and which instrument states that as of September 1, 1957, there was remaining due the sum of $21,172.94, together with interest at the rate of 6% per annum, on said sum. This remaining balance proved to be incorrect and by an assignment, dated January 30, 1958, the defendants executed a corrective assignment of the vendor's lien and in said corrective assignment it is stated that as of November 1, 1957, there remained due the sum of $11,859.81, together with interest at the rate of 6% per annum on said sum.

''The difference between these two sums, which is $9,313.13, is the amount involved in this law suit.''

Powell testified that the Peakers had acknowledged their indebtedness to appellee in this amount, and had

promised to pay it, but had not done so. This testimony was not denied by appellants, and, in fact, neither appellant testified. The only testimony offered by appellants was that of Beverly Johnson, who testified that, while at Mr. Powell's ranch near Waco, Texas, with several other people, just before going on a dove hunt, the Peakers sold all of their interest in certain oil properties to Powell for the sum of $200,000.00.[1]

Appellants contend that any purported claim by appellee is barred by the statute of limitations, and they also argue that, under the agreement of sale, the various properties were not to be considered separately, but rather, *all* interests, held by appellants in the several properties, were being sold to appellee for the lump sum of $200,000.00; that the vendor's lien was included in this total amount.

In arguing that the suit is barred by the statute of limitations, appellants take the position that the cause of action herein is one to recover for money paid by mistake, and is thus barred by the three-year statute of limitations. We agree with the trial court that this contention is unsound, for perhaps several reasons, but one fact is sufficient to enable us to determine that there is no merit in this assertion. The trial court found that it was

"* * * clear from the evidence that the mistake, if that is what is involved, was made on October 12, 1957,

---

[1] From the testimony:

"Q. Tell the court briefly the negotiations that led up to this agreement sale, and what the terms of the agreement were, as you remember it?

A. Well, I don't know what led up to it. Every one was just down there, and I believe we were going on a dove hunt, may be, and one, either Mr. Powell, or Mr. Peaker said to the other one something about either selling or buying the Snow Hill properties, and the conversation started from there, and uh—(interrupted)

Q. What was the purchase price agreed upon at that time?

A. $200,000.00.

Q. And what was to be sold to Mr. Powell for the $200,000.00?

A. As I recall it, all of Mr. Peaker's interest in the Snow Hill field, in the Laney, the Reynolds Brothers, and the Reynolds-Berg leases, and a lien he was holding on Mr. Grandbush.

Q. Was that the vendor's lien, that is referred to here as the vendor's lien?

A. Yes, sir."

when Don H. Peaker and wife assigned the vendor's lien involved to the plaintiff and that if the cause of action to recover as a result of such mistake is what is sued on here, then said mistake occurred on October 12, 1957, and the cause of action should date from that date and hence would .be within the three year period involved when the suit was filed on September 30, 1960.''

The original assignment of the vendor's lien, although the instrument states that it is to be effective from September 1, 1957, was executed on October 12, 1957, and we think this date is controlling. This suit was accordingly filed in time.

As to the second argument, we certainly can see no reason, nor necessity, for the execution of the corrective assignment of January 30, 1958, if appellants are right in their contention. This assignment specifically states:

''It is expressly understood and agreed between the parties hereto that this Assignment is given in lieu of and instead of a certain Assignment of Vendor's Lien by and between the parties hereto dated October 12, 1957.''

The trial court found that the amount due,

''* * * which was secured by the vendor's lien, was unquestionably a factor in the minds of the parties when the consideration was agreed upon. The testimony shows that while negotiations were carried on, the various interests owned by the defendants were considered .and discussed, and the actions of the parties subsequent to these discussions show that they were aware of the vendor's lien interest and were concerned with the balance due thereon.

''It therefore appears that it was contemplated by the parties that the exact amount remaining due and secured by the vendor's lien would be ascertained and the actions of the parties show that they contemplated that adjustments could be made when the exact amount due was ascertained and that pursuant to that understanding the corrective assignment of the vendor's lien was made.

In fact this appears to be the only interest conveyed which was capable of exact valuation and when it was determined that the indebtedness secured by the vendor's lien was over $9,000.00 less than originally thought, the defendants executed a corrective assignment of said lien and agreed to pay the $9,313.13 to the plaintiff."

Here, we are, of course, only concerned with whether there was substantial evidence to support the judgment of the trial court, and, under the facts herein enumerated, we are unable to say that the evidence offered by appellee was not of a substantial nature.

Judgment affirmed.